# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **NATIONAL ELECTRICAL BENEFIT FUND,** | * | |
| Plaintiff, | * | |
| v. | * | Case No. 8:11-cv-0090-RWT |
| **ARLINGTON PARK RACECOURSE, LLC,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

This ERISA action concerns delinquent contributions allegedly owed a multi-employer pension fund. Defendant moves to dismiss the complaint on the ground that Plaintiff's claims are barred by the applicable statute of limitations. For the reasons set forth below, the court will deny Defendant's motion to dismiss.

## FACTS

The National Electrical Benefit Fund ("NEBF"), located in Rockville, Maryland, is a multi-employer pension benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). Compl. ¶ 4. NEBF was established pursuant to an agreement between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA"). *Id.* Pursuant to collective bargaining agreements with the IBEW or one of its affiliated local unions, employers agree to make pension fund contributions to NEBF. *Id.* This case is brought on NEBF's behalf by its trustees to recover allegedly delinquent contributions owed by Defendant Arlington Park Racecourse, LLC ("Arlington"). *Id.* at ¶¶ 5-8.

Arlington, a subsidiary of Churchill Downs, Inc., is an Illinois limited liability company, whose main place of business is in Arlington Heights, Illinois. *Id.* at ¶ 6. On or around March 13, 1989, Arlington became a signatory to a collective bargaining agreement ("CBA") with IBEW Local Union 134, the collective bargaining representative of Arlington's employees. *Id.* at ¶¶ 7-9. NEBF alleges that on the date the CBA was signed, Arlington became obligated to make contributions to NEBF on behalf of those of its employees that are covered by the CBA. *Id.* at ¶¶ 7-11.

In 2009, NEBF received pension benefit applications from Roger Jameson and David Wischmeyer, both of whom worked for Arlington and were members of IBEW Local Union 134 from 1989 to 2000. Compl. ¶¶ 11-15, Opp. to Mot. to Dismiss at 3-4. After receiving these applications, the NEBF learned that between 1989 and 2000, Arlington did not submit any reports to the NEBF or make any contributions on behalf of its employees. Compl. ¶¶ 10-11. Based on employment information received from IBEW Local Union 134 and the Social Security Administration regarding Jameson and Wischmeyer, NEBF calculated that it was owed at least $29,011.41 in contributions by Arlington for the period from March 13, 1989 through March 31, 2000. *Id*. at ¶ 12. Additionally, NEBF claims that it is owed interest at a rate of 10% per annum and liquidated damages in the amount of 20% of the delinquency, which amount to $95,642.60 and $5,802.28 respectively. *Id.* at ¶¶ 13-14.

## PROCEDURAL HISTORY

NEBF, by and through its trustees, filed a complaint in this court on January 11, 2011. ECF No. 1. NEBF alleges that Arlington violated the CBA it signed with IBEW Local Union 134 by failing to make the aforementioned contributions, and claims that Arlington is therefore liable to NEBF pursuant to §§ 502(a)(3) and 515 of ERISA, 29 U.S.C §§ 1132(a)(3) and 1145.

*Id.* at ¶ 2. Pursuant to 29 U.S.C. § 1132(g)(2), NEBF seeks an award of actual and liquidated damages, accrued interest, and reasonable attorneys' fees and costs, and requests that the court issue an order compelling Arlington to pay any and all contributions it owes to NEBF for the period from March 13, 1989 through March 31, 2000. *Id.*

On March 11, 2011, Arlington filed a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. ECF No. 11-1. Arlington argues that a three-year statute of limitations applies to NEBF's claims, and the claim accrued, at the latest, eleven years ago. *Id*. at 4. Accordingly, Arlington argues that NEBF's claims are time-barred and must be dismissed. *Id*. at 5.

On April 8, 2011, NEBF opposed Arlington's motion to dismiss, arguing that its claims are not time-barred pursuant to the "discovery rule." ECF No. 14. NEBF concedes that the applicable limitations period is three years, but argues that its claims did not accrue until 2009, when it was put on notice of Arlington's potential delinquency. *Id.* at 1. Accordingly, NEBF argues that its claim, which was filed on January 11, 2011, was filed within the three-year limitations period. *Id.*

On April 22, 2011, Arlington filed a reply in support of its motion to dismiss. ECF No. 15. Arlington argues that the Fourth Circuit has never applied the "discovery rule" to delinquent contribution cases, and should not do so in this case, where NEBF has waited over twenty-one years from the date the cause of action accrued to bring this suit. *Id.* at 1-3. It further argues that even if the discovery rule does apply, NEBF did not exercise reasonable diligence in discovering its cause of action. *Id.* at 3-4. Accordingly, Arlington concludes, even if the discovery rule applies, this action must be dismissed as time-barred. *Id*.

# **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim or claims asserted in a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court held that in order to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court clarified, that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." -- U.S. --, 129 S. Ct. 1937, 1949 (2009).

The Court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff in determining whether the plaintiff has stated an actionable legal claim. *See Lambeth v. Bd. of Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir. 2005), Nevertheless, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). If the complaint shows on its face that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim. *Jones v. Bock,* 549 U.S. 199, 215 (2007).

**ANALYSIS**

ERISA does not contain an explicit statute of limitations for actions seeking recovery of delinquent pension fund contributions. *See Shofer v. Hack Co.*, 970 F. 2d 1316, 1319 (4th Cir. 1992). Accordingly, this court must apply the most analogous state statute of limitations. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S. Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) (stating the rule that when "there is no specifically stated or otherwise relevant federal statute of limitations for a cause of action. . . the controlling period would ordinarily be the most appropriate one provided by state law."); *Shofer*, 970 F.2d 1316, 1319 (borrowing state statute of limitations in ERISA case).

Many federal courts have held that the most analogous state limitations period for delinquent contributions claims is that which applies to claims for breach of contract. *See Board of Trustees v. D'Elia Erectors,* 17 F. Supp. 2d. 511, 513-14 (E.D. Va 1998); *Trustees of the Operative Plaster's Protective and Bene. Society,* 794 F.2d 1217, 1221 n. 8 (7th Cir 1986); *Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.,* 799 F.2d 1098, 1105 (6th Cir. 1986). This Court similarly concludes that the most analogous state statute of limitations is the statute of limitations for breach of contract actions, which in Maryland is three years. *See* Md. Code, Cts. and Jud. Pro., § 5-101.

Although the governing limitations period is borrowed from state law in ERISA delinquent contributions cases, the time at which the cause of action accrues is determined by federal law. *See Blanck v. McKeen,* 707 F. 2d 817, 819 (4th Cir.1983). The federal "discovery rule" provides that a cause of action accrues and the statute of limitations begins to run only when the plaintiff "discovers, or by the exercise of due diligence should have discovered, the facts forming the basis of his cause of action." *Blanck,* 707 F. 2d at 819. "The statute of

limitations will begin to run when the plaintiff has knowledge of circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [injury]." *Ross v. Triad Financial Corp.,* 2006 WL 5530495 (D. Md. Aug. 15, 2006) (*citing Lumsden v. Design Tech Builders, Inc.,* 358 Md. 435, 446, 749 A.2d 796, 802 (2000)). The Fourth Circuit has defined due diligence as "[such] a measure of prudence, activity or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." *D'Elia Erectors,* 17 F. Supp. 2d. 511, 515 (*quoting Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931, 941 (4th Cir. 1991)).

Though the Fourth Circuit has not considered the discovery rule's application to delinquent contribution cases, many federal courts have applied the discovery rule to claims for delinquent ERISA contributions. *See e.g. D'Elia Erectors,* 17 F. Supp. 2d. 511, 518; *Michigan United Food and Commercial Workers Unions & Drug & Mercantile Employees Joint Health and Welfare Fund v. Muir Company, Inc.,* 992 F.2d 594, 599-600 (6th Cir. 1993); *Connors v. Hallmark & Son Coal Co.,* 935 F.2d 336, 342 (D.C. Cir. 1991); *Durso v. 130-10 Food Corp.,* 2009 WL 3084268, *4 (E.D.N.Y. Sept. 23, 2009); *Central States Pension Fund v. Transport Service Co.,* 2009 WL 424145 at *8-9 (N.D. Ill. Feb. 17, 2009). In determining whether ERISA funds have exercised reasonable diligence in discovering that employers have been delinquent in making contributions, our sister courts have considered the nature and extent of the injury suffered by the fund, the fund's ability to investigate, the spirit of the collective bargaining agreement, and any fraudulent conduct by the employer. *See e.g. D'Elia Erectors,* 17 F. Supp. 2d. 511, 518; *Connors v. Beth Energy Mines, Inc.,* 940 F.2d 205, 210-12

(3rd Cir. 1990); *Michigan United,* 992 F.2d 594, 599-600; *Central States Pension Fund v. Transport Service Co.,* 2009 WL 424145 at **8-9 (N.D. Ill. Feb. 17, 2009).

In *D'Elia Erectors*, where an employer submitted incomplete remittance reports and contributions to a pension fund for sixteen years and then did not submit either for a four-month period, the Eastern District of Virginia held that the fund was on notice of a delinquency only when the employer stopped filing reports and making contributions. *D'Elia Erectors,* 17 F. Supp. 2d. at 513, 518. By contrast, in *Connors*, where an employer submitted bi-weekly reports to the pension fund which reflected a change in the way lunch hours were accounted for so as to decrease contributions, the United States Court of Appeals for the D.C. Circuit held that the fund was on notice of a delinquency as soon as the change was made. *Connors,* 940 F. 2d at 210-12. The court reasoned that the reports contained information that should have put the fund's trustees on notice that the employer was calculating its contributions improperly. *Id.* Similarly, in *Michigan United*, where delinquent contributions over a year-long period were not discovered by the fund until almost seven years later, the Sixth Circuit held that the claim was time-barred by the six-year statute of limitations because the employer had previously been found delinquent by the fund and the fund had in its possession for the entire seven-year period all the information necessary to discover the accounting discrepancy. *Michigan United Food,* 992 F.2d at 599.

However, in *Central States*, the Northern District of Illinois held that an ERISA fund's claim for delinquent contributions did not accrue until the local union reported the employer's delinquency to the fund. *Central States*, 2009 WL 424145 at **8-9. The court reasoned that the fund's failure to investigate was reasonable because the employer had gone to "great lengths to hide" its delinquency. *Id*. at **8-9. In sum, our sister courts have held that a pension fund must

7

act promptly once it has information in its possession that should alert it to the employer's delinquency; only then will the claim for delinquent contributions accrue.

In this case, where NEBF has not alleged that Arlington attempted to conceal its delinquency, NEBF had a duty to investigate Arlington's delinquent contributions as soon as it knew that Arlington had signed the collective bargaining agreement and thereby became obligated to contribute to the fund. NEBF alleges that it did not know that Arlington was a signatory to the CBA with IBEW Local Union 134 until 2009 when Jameson and Wischmeyer applied for benefits, triggering NEBF's investigation of Arlington's delinquency. *See* ECF No. 14 at 3-4. Arlington has not presented the Court with sufficient facts, at this point, for the Court to conclude that NEBF should have known of Arlington's delinquency before Jameson and Wischmeyer submitted benefit applications in 2009.

The Court notes that it is typical for multi-employer funds, including NEBF, to require employers to "self-report" the employment of covered employees and make contributions on their behalf; NEBF does not perform this data collection itself. ECF No. 14 at 3. "Reliance on the honesty and accuracy of the reporting employers is the heart that animates the self- reporting system." *D'Elia Erectors,* 17 F. Supp. 2d. at 517. Given that Arlington submitted no reports or contributions to NEBF from 1989 until 2000, NEBF was not on notice of Arlington's delinquency until at least 2000. Whether NEBF ought to have made a prompter inquiry into Arlington's deficient contributions between 2000 and 2009 is a fact-intensive inquiry that the

court cannot resolve at this stage. Accordingly, the Court will deny Arlington's motion to dismiss.

A separate Order follows.


<u>July 8, 2011</u>    <u>         /s/         </u>
Date    Roger W. Titus
    United States District Judge